```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  GLORIA PESCO,

                    Plaintiff,              MEMORANDUM & ORDER
                                               20-CV-1124-EK
        -against-

  KIOLO KIJAKAZI, ACTING COMMISSIONER
  OF SOCIAL SECURITY,¹

                    Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Plaintiff seeks judicial review of the Commissioner of the Social Security Administration's decision to deny her claims for disability insurance benefits and supplemental security income. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, the Court grants the Commissioner's motion and denies Plaintiff's cross-motion.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul, former Commissioner of Social Security, as the Defendant in this suit. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## I. Background

### A. Procedural History

Plaintiff applied for disability insurance benefits on January 7, 2015, alleging disability since January 15, 2013. The claim was initially denied. After requesting a hearing, Plaintiff appeared before an administrative law judge ("ALJ") on December 19, 2017 and June 28, 2018. The ALJ found that Plaintiff was not disabled and was therefore not entitled to disability insurance benefits or supplemental security income. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, rendering it final. This appeal followed.

### B. The ALJ Decision

An ALJ must follow a five-step inquiry for evaluating disability claims. First, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that significantly limits the applicant's ability to perform basic work activities. *Id.* § 404.1520(c). If the ALJ identifies a severe impairment, he or she must determine if it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments"). *Id.* § 404.1520(d);

20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, the ALJ will deem the applicant disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity, and had the following severe impairments: lumbar spine degenerative disc disease, left knee torn meniscus, osteoarthritis, asthma, and bipolar disorder.  Tr. 18.  None of those impairments, however, rose to the level of a Listed Impairment.  Tr. 19.

Next, the ALJ must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can still do in a work setting despite his or her physical and mental limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ found in this case that Plaintiff had the residual capacity to perform "sedentary work" with limitations.  Tr. 19.  Those limitations included that Plaintiff "would need to change positions for five minutes each hour," and could "perform only simple, routine, repetitive work with occasional contact with co-workers, supervisors and the public."  *Id.*

At step four, the ALJ considers whether, in light of the claimant's RFC, the claimant could perform "past relevant work."  20 C.F.R. § 404.1520(f).  If not, at step five, the ALJ evaluates whether the claimant can perform jobs existing in significant numbers in the national economy.  *Id.* § 404.1520(g).  The ALJ found here that although Plaintiff could

3

not perform past work as a bartender, she could perform other jobs existing in significant numbers in the national economy, including "final assembler," "waxer," and "addresser." Tr. 25-26.

## II. Standard of Review

A federal district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotations omitted). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

## III. Discussion

### A. Treating Physician Rule

Plaintiff argues that the ALJ erred in not according controlling weight to treating physician Dr. Grace Komolafe, a family medicine doctor at the Jamaica Hospital Medical Center

4

clinic.  Dr. Komolafe treated Plaintiff at the clinic on a single occasion (June 22, 2017) for an upper respiratory infection and chronic low back pain.  Tr. 21.  Dr. Komolafe then completed a disability impairment questionnaire in October 2017, and provided an updated report in May 2018.  She opined that Plaintiff could sit, stand, or walk for less than one hour in an eight-hour work day, would need to shift positions every thirty minutes and wait two to three minutes before returning to a seated position.  Tr. 21, 595.  The ALJ gave this opinion only "limited weight," finding Dr. Komolafe's RFC statement to be "very restrictive" and "inconsistent with the medical evidence and with Dr. Komolafe's own findings, which showed some limitations, but not to that level of severity."  Tr. 24.[2]

Under the "treating physician" doctrine, an ALJ must give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

---

[2] The record shows that Plaintiff attended the Jamaica Hospital clinic on multiple occasions between 2013 and 2018, but appears only to indicate one occasion, in June 2017, on which Plaintiff saw Dr. Komolafe specifically.

"A medical treating source" is one that "provides the applicant 'with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship' with the applicant." *Comins v. Astrue*, 374 F. App'x 147, 149 (2d Cir. 2010) (citing 20 C.F.R. § 404.1502).  The Second Circuit has found that "a physician who only examined a claimant 'once or twice' did not see that claimant regularly and did not develop a physician/patient relationship with the claimant, *even though other practitioners in the same facility had also submitted medical opinions on behalf of the claimant*." *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)).  The ALJ nonetheless treated Dr. Komolafe as a treating physician.

5

the other substantial evidence in [the] case record." *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)). An ALJ may discount a treating physician's opinion, however, when it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In weighing a treating physician's opinion, an ALJ must consider: "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence . . . , particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527) (cleaned up). The regulations also require that the ALJ set forth "good reasons" for not crediting the opinion of the treating provider. *Cervini v. Saul*, 17-CV-2128, 2020 WL 2615929 at *5 (E.D.N.Y. May 21, 2020) (citing *Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998)).

The ALJ properly applied the treating physician rule in finding Dr. Komolafe's opinion was "not consistent with other substantial evidence in the record." *Halloran*, 362 F.3d at 32.

Dr. Komolafe's opinion was inconsistent with the findings of treating physician Dr. Michael Dinizo, an orthopedic

6

surgeon. He saw Plaintiff at Jamaica Hospital in December 2017, two months after Dr. Komolofe issued her opinion. His examination revealed no tenderness over the spine, negative straight leg raise testing, full and painless range of motion of the spine, intact sensation, and a normal gait on examination. Tr. 21-22, 2233-34. Dr. Dinizo advised no orthopedic intervention. *Id*. He recommended a "good course of physical therapy," non-steroidal anti-inflammatory drugs for pain, and "activity as tolerated." *Id*.[3]

The findings of two non-treating sources are also in conflict with Dr. Komolafe's opinion. Following a physical examination in 2015, consultative examiner Dr. Chaim Shtock recorded full range of motion of the back, shoulders, thorocolumbar spine, and right lower extremity, and some limited range of motion of the left knee, but no muscle atrophy and only slightly reduced left lower leg muscle strength. Tr. 20, 531-

---

[3] Plaintiff argues the ALJ impermissibly substituted his opinion for that of a medical doctor by finding it significant that "Dr. Komolafe provided very little in the way of follow-up medical treatment, other than the prescription of Oxycodone." However, this "conservative treatment regimen [was] merely [relied on] as additional evidence supporting the ALJ's determination rather than as 'compelling' evidence sufficient in itself to overcome an 'otherwise valid medical opinion.'" *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008). The ALJ thus "did not impermissibly 'substitute his own expertise or view of the medical proof for the treating physician's opinion.'" *Id*. (citing *Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000)). In addition, the ALJ had found that Oxycodone "was a concern for her several of her physicians, who advised a decrease in usage." Though there is no evidence of abuse, a "claimant's misuse of medications is a valid factor in an ALJ's credibility determinations." *Morgan v. Berryhill*, No. 1:15-CV-00449, 2017 WL 6031918, at *5 (W.D.N.Y. Dec. 5, 2017).

7

32. He noted no paraspinal tenderness, muscle spasm, or trigger points. *Id*. He opined that Plaintiff had no limitation with respect to "sitting long periods" and mild to moderate limitation for "standing long periods." *Id*. He also found no limitation for "frequent bending," "performing overhead activities using both arms," and "using both hands for fine and gross manual activities." *Id*.

Dr. Robert Kaplan, an internist, testified as the medical expert at the ALJ hearing. He opined on Plaintiff's physical condition based on a review of the medical record. He stated that Plaintiff should be limited to sedentary work (with a sit/stand option) based on her "left knee and lower extremity problem." Tr. 53. He noted, among other things, a history of chronic back and left knee pain, but observed that an MRI in September 2017 showed improvement with respect to Plaintiff's back. *Id*.

Plaintiff argues the ALJ erred in giving Dr. Kaplan's opinion "significant weight." The Social Security regulations, however, "permit the opinions of non-examining sources to override treating sources' opinions provided they are supported by evidence in the record." *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995). For the reasons set forth above, Dr. Kaplan's opinion that Plaintiff could perform sedentary work is supported.

8

Plaintiff also argues that the ALJ did not evaluate the various 20 C.F.R. § 404.1527 factors in Dr. Komolafe's opinion. The ALJ need not undertake "a slavish recitation of each and every factor," however, "where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). Where — as here — "'a searching review of the record' assures [the Court] 'that the substance of the treating physician rule was not traversed,' [the Court] will affirm." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019).

**B. Residual Functional Capacity**

Plaintiff argues next that the ALJ erred in determining her Residual Functional Capacity. First, Plaintiff claims that the ALJ failed to perform a "function-by-function" assessment of her capacities, because he did not identify the evidence supporting the finding of each function. The Social Security Administration has stated that an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling 96-8p, 1996 WL 374184 (1996). The functions include "certain physical demands of work activity, such as sitting, standing,

9

walking, lifting, carrying, pushing, pulling, or other physical functions." 20 C.F.R. § 404.1545(b).

Here, after the ALJ set forth Plaintiff's RFC, including associated limitations, he went on to discuss the medical record in detail, reviewing approximately twenty medical visits. The ALJ also listed, and considered, the functional limitations set forth in five doctors' medical opinions — Richard Cohen (psychiatric medical expert), Teresita Ruiz (treating psychiatrist), Shtock, Komolafe, and Kaplan. This is sufficient, as an ALJ "need not provide a narrative discussion for each function." *Novak v. Astrue*, No. 07-CV-8435, 2008 WL 2882638 (S.D.N.Y. July 25, 2008).

Plaintiff argues that even if the ALJ can be said to have satisfied the requirement of function-by-function analysis, that analysis does not support the RFC. Plaintiff claims that the ALJ failed to account for certain medical evidence, including her bipolar disorder diagnosis by psychotherapist Dr. Jeffery Hutterer; consultative examiner Dr. Toula Georgiou's opinion that she suffered "some impairment in attention and concentration"; and the fact that she used a prescribed cane and knee brace. This claim is incorrect, as the ALJ's thorough opinion did actually consider this medical evidence calibrating Plaintiff's RFC. *See* Tr. 20 (ALJ notes that claimant used a cane and knee brace for outdoor walking; has a history of

10

bipolar disorder; and her level of attention and concentration was mildly impaired).

An ALJ is "entitled to weigh all of the evidence available to make an RFC finding," as long as it is "consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). In doing so, an ALJ may "choose between properly submitted medical opinions," *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983), and resolve conflicting evidence. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."). An ALJ's conclusion, therefore, need not "perfectly correspond with any of the opinions of medical sources cited." *Matta*, 508 Fed. Appx. at 56. Because the record here "contains sufficient evidence from which an ALJ can assess the [Plaintiff's] residual functional capacity," and the ALJ's RFC determination was consistent with the record as a whole, the ALJ did not err in finding Plaintiff's RFC. *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020).

## IV. Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies

the Plaintiff's cross-motion.  The Clerk of Court is respectfully requested to enter judgment and close this case.



SO ORDERED.

                                        /s Eric Komitee_____
                                        ERIC KOMITEE
                                        United States District Judge


Dated:     September 29, 2021
          Brooklyn, New York